In the Matter of the Estate of HERBERT H. DOUGLASS, Deceased.

Surrogate's Court, Madison County, December, 1922 (Received January, 1923).

**Wills — construction — trusts — illegal suspension of the power of alienation — ineffective disposition of residuary estate.**

Testator was survived by a son, a daughter and three infant grandchildren, children of his daughter. His will, aside from certain pecuniary and specific bequests, gave one-half of the residuary estate to his son and the other half, together with the brick block known as the " Merchants' Exchange," to trustees to pay over the income to his daughter for life. The brick block was

sold by testator during his lifetime and the trust created for his daughter consisted only of personal property. The remainder of the trust provision claimed to be invalid and to defeat the entire residuary scheme is as follows: " In case of her [daughter's] death leaving a child or children her surviving under the age of twenty-one years, such net income shall be used and paid over for the benefit, support and maintenance of such child or children during the minority hereinafter specified. After the death of my said daughter and after the arrival of her two youngest children me surviving at the age of twenty-one years, said block and residuary interest shall pass to such child, or all of such children, whether one or more, absolutely. In case no child or children shall survive my said daughter, or in case of such survival without attaining the age of twenty-one years, said block and said one-half of my residuary estate shall pass to my son, * * * and his heirs and next of kin forever. The beneficiaries entitled to share in the corpus of said trust shall be only such child or children who shall survive the time of the termination of such trust, but each child shall be entitled to receive his or her share of the income therefrom as long as said child shall live during the life of the trust and I give, devise and bequeath accordingly." *Held,* that as in legal effect it was the same as though the trust period had been made to continue beyond the lifetime of testator's daughter and then during the lives of the youngest two of the grandchildren, the trust attempted to be created violated section 11 of the Personal Property Law in that it suspends the absolute ownership of the property for a longer period than that of two lives in being at testator's death, and was, therefore, illegal and void; that the trust is so interwoven with the disposition of the residuary estate that the entire residuary plan, scheme and disposition must be declared void and set aside as of no effect; that except as to the pecuniary and specific bequests the testator died intestate, the son taking one-half of the residuary and the daughter the other half absolutely.

PROCEEDING to construe a will.

*E. Leland Hunt,* for executor.

*Walter W. Wilcox,* as special guardian, in person.

*Wile, Oviatt & Gilman,* for Grace Douglass Rathbun.

SENN, S. This is a proceeding for the judicial construction of the will of Herbert H. Douglass, late of Oneida, N. Y., deceased, who departed this life on May 20, 1921, leaving a will dated March 29, 1911, and a codicil dated November 26, 1913, both of which have been admitted to probate and letters issued to H. Lee Douglass as executor, he being also the testamentary trustee. Testator left him surviving H. Lee Douglass, a son, and Grace Douglass Rathbun, a daughter; also three grandchildren who were children of his daughter, aged, respectively, eighteen, sixteen and eight years. Two of them were living when the will was made and one was born between the date of the will and that of the codicil.

The will, aside from certain pecuniary and specific bequests, gives one-half of the residuary estate to the son and the other half, together with the brick block known as the " Merchants' Exchange," is given to the trustees to pay over the net income

from the trust semi-annually to Grace Douglass Rathbun, the daughter, during her lifetime. The brick block was sold by testator before his decease. The trust for the life of Mrs. Rathbun, considered apart from the remainder of the trust, is concededly valid.

The remainder of the trust provision, claimed to be invalid and to defeat the entire residuary scheme, is as follows:

" In case of her [daughter's] death leaving a child or children her surviving under the age of twenty-one years, such net income shall be used and paid over for the benefit, support and maintenance of such child or children during the minority hereinafter specified. After the death of my said daughter and after the arrival of her two youngest children me surviving at the age of twenty-one years, said block and residuary interest shall pass to such child, or all of such children, whether one or more, absolutely. In case no child or children shall survive my said daughter, or in case of such survival without attaining the age of twenty-one years, said block and said one-half of my residuary estate shall pass to my son, Herbert Lee Douglass and his heirs and next of kin forever. The beneficiaries entitled to share in the corpus of said trust shall be only such child or children who shall survive the time of the termination of such trust, but each child shall be entitled to receive his or her share of the income therefrom as long as said child shall live during the life of the trust and I give, devise and bequeath accordingly."

Counsel for the daughter claims that the trust so attempted to be created is illegal and void; that it violates the provisions of section 11 of the Personal Property Law in that it suspends the absolute ownership of personal property for a longer period than during the continuance of not more than two lives in being at the time of testator's decease; that it violates the provisions of section 42 of the Real Property Law in that it suspends the absolute power of alienation of property for a longer period than during the continuance of not more than two lives in being at the creation of the estate; that it creates a trust for a longer period than is allowed by law; that the trust during the life of the daughter, in itself valid, is so interwoven with the remainder of the trust that it must fall with the same; that all the trust provisions of the residuary clause form such an essential part of the entire residuary scheme that they cannot be separated therefrom without doing manifest violence to the testator's intent, and that as a necessary consequence the entire disposition of the residuary estate must fail and the testator held to have died intestate as to such residue.

It is elementary law, too familiar to require the citation of authorities, that the intent of the testator is first to be ascertained;

that when this has been done the will is to be given effect in the light of that intent, if it can be legally done, no matter how imperfectly it may have been expressed, if the intent can actually and certainly be deduced from the language used; that the court may supply words to make clear that which for any reason was not clearly expressed, but no new provisions may be written in for the purpose of supplying that which the testator might be supposed to have intended to provide, but did not. In other words, the court may interpret but must not construct the will; it may make verbal corrections in elucidation of the evident intent, but may not rewrite testator's will for him. Having ascertained the provisions of the will, their meaning and intent, it then becomes the duty of the court to decide whether these provisions are legal.

There does not appear to be any ambiguity in the will, at least none that requires solution here, and it is very evident that the testator intended to give one-half of his residuary estate to his son unconditionally, and the other half to his daughter and her children under restrictions; that he desired to postpone the vesting of the remainder to the grandchildren for the longest time compatible with their best interests and that he desired to avoid, as far as he could, the passing of any portion of his estate to persons not of his blood. In furtherance of this purpose he attempted to create a trust to continue, not only during the lifetime of his daughter, but during the minority of the youngest two of his grandchildren who should survive him. This clearly violated the statute applicable to the case. The trust related to both real and personal property, but by the sale of the brick block before testator's decease the trust *res* consisted only of personal property. It is, therefore, immaterial to consider whether the power of alienation of real estate could be suspended for two lives and a minority as held in *Manice* v. *Manice*, 43 N. Y. 303, 375, because it was there held that the statute permitting a contingent remainder in fee to be created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited die under the age of twenty-one years, did not apply to personal property.

A suspension which by any possibility can be continued beyond two lives in being at the time of testator's decease violates the rule. *Schettler* v. *Smith*, 41 N. Y. 328; *Knox* v. *Jones*, 47 id. 389; *Herzog* v. *Title Guarantee & Trust Co.*, 177 id. 86; *Central Trust Co.* v. *Egleston*, 185 id. 23; *Matter of Wilcox*, 194 id. 288; *Matter of Hitchcock*, 222 id. 57.

A suspension for a definite number of years or for a definite time is prohibited (*Kalish* v. *Kalish*, 166 N. Y. 368; *Smith* v. *Chesebrough*, 176 id. 317; *Brinkerhoff* v. *Green*, 137 App. Div. 916; affd.,

201 N. Y. 559; *Davis* v. *MacMahon*, 161 App. Div. 458; affd., 214 N. Y. 614; *Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 id. 525), unless, of course, there is a provision for an earlier termination on the expiration of two lives in being. *Schermerhorn* v. *Cotting*, 131 N. Y. 48. Neither can there be a suspension for an indefinite time, other than within or during the continuance of not more than two lives. *Underwood* v. *Curtis*, 127 N. Y. 523, 526.

It is well settled that a suspension during a minority is equivalent to a possible suspension during a life. *Jennings* v. *Jennings*, 7 N. Y. 547; *Benedict* v. *Webb*, 98 id. 460; *Matter of Butterfield*, 133 id. 473; *Jacoby* v. *Jacoby*, 188 id. 124, 129.

In the case at bar, therefore, it is in legal effect the same as though the trust period had been made to continue during the lifetime of Mrs. Rathbun and then during the lives of the youngest two of the grandchildren surviving the testator. The trust attempted to be created did, therefore, suspend the absolute ownership of personal property for a period possibly greater than that of two lives in being at testator's decease and so violated the statute in question. It follows that the trust cannot be sustained in its entirety.

The next question is whether the trust can be upheld in its valid features by deleting the provisions which make it illegal. It has been held in many cases that this may be done where the valid parts are separable from those which are invalid without destroying the testamentary scheme, that is, if what remains still leaves the will as testator fairly may be presumed to have intended, had he known that the parts held to be illegal would be stricken out. For the purposes of this case I think it will be sufficient to refer to three authorities as covering the various phases of the question hereby presented, especially as to whether the legacy to the grandchildren can be accelerated by eliminating the suspension during the lives of the youngest two, so that the grandchildren would be vested on the death of their mother.

In *Kalish* v. *Kalish*, 166 N. Y. 368, 374, 375, the court, among other things, said: " It is axiomatic that courts cannot make new wills for testators who have failed to make valid wills for themselves. While recognizing the force of this truth courts have from the earliest times been compelled to choose between the alternatives of setting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule which is now firmly established in this state, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altgether; but when it is possible to cut out the invalid provisions, so as to leave

intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be. * * * 'It is no objection to the application of this rule * * * that the limitations, as well those which are good as the one alleged to be bad, are embraced in a single trust. A single trust created for two purposes, one lawful and the other one unlawful, is good for the lawful one, although void for the unlawful one.' *Harrison* v. *Harrison* (36 N. Y. 543) * * * So in *Kennedy* v. *Hoy* (105 N. Y. 134) * * * this court said: ' Where several trusts are created, and they are independent of each other, each trust complete in itself, and the legal can be separated from the illegal and upheld without doing injustice, or defeating what the testator might in the emergency be presumed to wish, the illegal trust may be cut off and the legal permitted to stand.' "

This case (*Kalish* v. *Kalish*) was one in which testator gave his widow all his property for life. After her death the entire estate was to be held in trust to pay designated annuities to two daughters and after paying certain charges, to invest the surplus in real estate. The estate was not to be settled or distributed for five years after the widow's decease, but as soon after that as the executors might deem best for the estate. On final settlement plaintiff, a son, was to receive $100, $8,000 to be held in trust for a daughter for life, then to her surviving child or children, if any, and if none survived her, to be divided among his other children, except plaintiff, in designated proportions. The residue of the estate to be divided among testator's sons and daughters, except plaintiff, in the same proportion as the $8,000 mentioned. It was held that the suspension for five years or longer was void, but that it could be " lifted out " without destroying the general scheme of the will and without violence to the intent of the testator; that the void intermediate trust being for the benefit of the same legatees who take under the valid ultimate trust, the excision of the void trust simply gave immediate effect to those ulterior devises which under it were to be postponed for five years and the same persons would take in the same proportion as before.

The *Kalish* case might at first glance seem to be an authority for the disposition I would like to make by cutting out the void trust and accelerating the remainder to the grandchildren. But there is this important difference: In the *Kalish* case the ultimate beneficiaries are unconditionally specified and practically vested, but in the instant case they are not to share in the corpus of the estate unless they survive the term of the trust. Those who will survive the term of the void suspension may or may not be the

same as those who would take by the suggested acceleration; they may or may not take in the same proportion as before, because the Douglass will clearly lets in afterborn children, regardless of their number. Besides, in the Kalish will there was no remainder over.

*Bailey* v. *Buffalo L., T. & S. D. Co.*, *supra*, was a case in which testator provided a trust fund of sixty thousand dollars out of the income of which fifty dollars per month was to be paid to Alanson C. Bailey, a brother, and thirty dollars per month to Mary A. Swain, a friend, the remainder of the income payable to Harlow W. Bailey, testator's son and only heir at law, all during the lives of said beneficiaries, or " until the trust shall terminate as hereafter stated." On the death of either said brother or friend, his or her share of the income was to be paid to the son and if the son died his share of the income was to be added to the principal of the trust fund and held for the children of said Harlow, each of whom, including those afterborn, was, on arriving at age, to receive his proportion of said principal sum, the amount received depending on the number of minor grandchildren then living. If no children of Harlow survived testator, or, surviving him, died before coming of age, then the trust was to continue for twenty-five years from the date of the will, and if there were then no children of Harlow living, the trust was to cease and the principal paid to the son Harlow, if living, otherwise to the heirs of testator's sister, Caroline E. Blair. It was, of course, held that the clause creating the trust was illegal. It not only suspended the absolute ownership of personal property for an illegal term, but also contained an unlawful direction for the accumulation of income. The paramount intent, as in the case at bar, was to provide for testator's grandchildren, whenever born. The right of any of them to receive any portion of the principal sum was contingent on each child attaining the age of twenty-one years and, as in our case, there was no vested remainder. The court held that the unlawful provisions and the lawful were connected together so as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion was retained and the other rejected; therefore, all must be held to be illegal; that the trust for the payment of the income of the fund was subordinate to the disposition made of the principal and they were so closely allied as to be inseparable. Consequently the whole trust was void.

Aside from other authorities, considered by itself alone, I would not feel that the *Bailey Case*, *supra*, was necessarily conclusive as to this; the trust in the *Bailey* case being much more involved and the valid provisions were in a greater degree subordinated to the invalid ones than is the case here. But whatever doubt might otherwise

remain is removed by the dictum and decision in *Brinkerhoff* v. *Green*, 137 App. Div. 916; affd., 201 N. Y. 559, where there was a void suspension for a period of fifteen years and the persons who were to take the residue, after the fifteen-year period, were such members of a designated class of persons (grandchildren) " as may then be living," and the court held that this residuary provision could not be carried into effect by accelerating the bequest, for there was no present gift and no vesting of an estate in the residuary legatees postponed merely as to the time of enjoyment. There, as in the present case, " the persons to take were those who might fulfill the condition of survivorship, no remainders were to vest within the period of suspension allowed by law, and the gift itself is so dependent on the void trust * * * that it cannot be given effect if any regard be had to the testator's actual intention."

The present case is even stronger, if that is possible, against the principle of acceleration, for the will states in positive language, leaving nothing to inference, that " the beneficiaries entitled to share in the corpus of said trust shall be only such child or children who shall survive the time of the termination of said trust." I must, therefore, hold that the entire trust is void and is so interwoven with the disposition of the residuary estate that the entire residuary plan, scheme and disposition must be declared void and set aside as of no effect.

If Mrs. Rathbun had been testator's only child and the entire residuary had been put in a trust exactly similar to the one in question, then it could have been held, under the authority of *Underwood* v. *Curtis*, *supra*, that the trust for the life of Mrs. Rathbun was valid and the remainder of the trust invalid so that as to such remainder testator died intestate. If such had been the case this would accomplish the same result as the suggested acceleration, because the grandchildren, as next of kin, would in that way be immediately vested of the remainder estate. But as the facts actually are, such a holding would result in giving testator's son a greater share of the estate than was intended; he would take, not only the one-half of the residuary given him by the will, but in addition he would be entitled to one-half of the other half of the residuary, subject to the trust during Mrs. Rathbun's life. This would result in manifest injustice and in addition would defeat testator's desire to make equal division of his estate between the two branches of his family, to which extent, at least, we can effectuate the testamentary intent. The son will take one-half of the residuary and the daughter the other half. Freed from the restrictions intended, the daughter may still fulfill her father's

desires by conserving her share of the estate for herself and her children, so that the fruits of his many years of intelligent endeavor may inure to the benefit of the natural objects of his solicitude.

The specific and pecuniary bequests and devises are valid. Otherwise, the testator died intestate.

A decree to that effect may be prepared.

Decreed accordingly.